UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNETTE, GIRAUD and SERA BARR,
Individually and on behalf of all other persons
similarly situated,

      Plaintiffs,

v.     Case No.  8:17-cv-02442-RAL-AEP

WOOF GANG BAKERY, INC., a Florida
Corporation (f/k/a WOOF GANG BAKERY,
LLC), WGB CLEARWATER, LLC, a Florida
Limited Liability Company,
RYAN D. LUND, individually, and
GINA MARIE LUND, individually,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Defendants' Woof Gang Bakery, Inc., WGB Clearwater, LLC, Ryan D. Lund, and Gina Marie Lund (collectively, "Defendants") Motion to Dismiss Claims Filed by Plaintiff Annette Giraud and Compel Arbitration ("Motion") (Dkt. No. 22), which was filed on November 22, 2017.  Plaintiff, Annette Giraud ("Giraud"), filed a Response and Incorporated Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration (Dkt. No. 25) on December 7, 2017. [1]  The Court conducted a hearing on January 25, 2018, and has carefully reviewed and considered the underlying arguments and is otherwise advised with the issues presented.  For the reasons that follow, I recommend that Defendants' Motion be granted to the extent as detailed in the following.

---

[1] The Court will not address whether Defendants' waived their right to compel arbitration because the issue is not in dispute, given that Plaintiff did not assert any such argument.

**Factual Background**

On October 18, 2017, Giraud and Sera Barr ("Barr"), individually and on behalf of others similarly situated, filed a complaint (Dkt. No. 1) against Defendants alleging violations under the Fair Labors Standards Act (FLSA). The Complaint identifies two groups of plaintiffs: pet groomers and non-pet groomers (*e.g.*, receptionists, assistants, or sales associates) (Dkt. No. 1, 2). Giraud and Barr assert a claim for unpaid overtime wages under the FLSA in Count I, and a claim for unpaid minimum wages under the FLSA in Count II (Dkt. No. 1, 20-23, 23-25). Giraud worked as a pet groomer ("Groomer") for Defendants (Dkt. No. 1 ¶1). Giraud asserts that Groomers were misclassified as independent contractors, exempt from the FLSA's wage and hour protections (Dkt. No. 1 ¶ 2). Under the FLSA, Giraud seeks to recover unpaid overtime wages, unpaid minimum wages, liquidated damages, attorneys' fees and costs (Dkt. No. 1 ¶ 1). On November 17, 2017, Brittany Faulkender ("Faulkender"), Brittany Westley ("Westley"), Erika Schumm ("Schumm"), and Amanda Stewart ("Stewart") joined in this action by filing Consents to Sue under the FLSA (Dkt. No. 18). Defendants assert, without opposition, that Westley's, Schumm's, and Stewart's claims are similarly situated to Giraud's claims (Dkt. No. 22, fn. 1) (noting that Faulkender "worked with a Woof Gang franchise in Kansas and her inclusion in this suit as "similarly situated" to those that worked with the Clearwater franchisee, WGB Clearwater, LLC, is improper [and that] Defendants intend to request the Court strike her Consent to Sue in a separate motion"). Defendants' Motion is focused on Giraud's, Westley's, Schumm's, and Stewart's (collectively "Plaintiffs") claims.[2] These facts, as alleged, are pertinent to those claims.

---

[2] Thus, this Report and Recommendation does not apply to Barr's or Faulkender's claims.

On February 22, 2016, Giraud executed a Woof Gang Bakery Independent Contractor Agreement ("Independent Contractor Agreement") (Dkt. No. 1, Ex. E; Dkt. No. 22, Ex. 1). Significantly, within the Independent Contractor Agreement is a clause entitled Mediation and Arbitration, which states:

> Meditation and Arbitration
>
> 23. Any controversy between the parties to this Agreement involving the construction or application of any of the terms, provisions, or conditions of this Agreement, shall on written request of either party served on the other, be submitted first to mediation and then if still unresolved to binding arbitration. Said mediation or binding arbitration shall comply with and be governed by the provisions of the American Arbitration Association for Commercial Disputes unless the Parties stipulate otherwise. The attorneys' fees and costs of arbitration shall be borne on losing party as set form in paragraph 21 above, unless the Parties stipulate otherwise, or in such proportions as the arbitrator shall decide.

("Arbitration provision") (Dkt. No. 22, Ex. 1, ¶ 23). Westley, Schumm, and Stewart each signed the same Independent Contractor Agreement with the same Arbitration provision, as the one signed by Giraud (Dkt. No. 22, Ex. 3). Westley's Independent Contractor Agreement is dated October 10, 2016, Schumm's agreement is dated May 23, 2017, and Stewart's agreement is dated January 20, 2017 (Dkt. No. 22, Ex. 3).

On or about August 2017, Giraud and Defendants entered into a new agreement (hereinafter "Commission Agreement"),[3] which contained no type of mediation or arbitration clause (Dkt. No. 25, Ex. A, ¶ 6).[4] Giraud asserts that she believed based on conversations with Defendants that the Independent Contractor Agreement was terminated and no longer governed

---

[3] It must be noted that Giraud failed to submit her signed Commission Agreement into the record. To exemplify the terms of her Commission Agreement, Giraud did submit an unsigned Commission Agreement (Dkt. No. 25, Ex. A, Ex. 1).

[4] The record is silent as to whether Westley, Schumm, or Stewart executed a Commission Agreement.

3

Giraud's employment (Dkt. No. 25, Ex. A, ¶ 4). Giraud disputes her status as an independent contractor, and contends that the Defendants violated the FLSA during her entire work history (Dkt. No. 25, Ex. A). Defendants assert that since the Independent Contractor Agreement contained a binding Arbitration provision, then any individuals, specifically including, Plaintiffs, who executed the Independent Contractor Agreement should be compelled to arbitrate their FLSA claims.

## Discussion

Arbitration agreements are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (2006), which establishes a national policy that favors the resolution of disputes by arbitration when the parties have contracted for that mode of dispute resolution. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

Section 2 of the FAA evidences Congress' intent to declare a federal policy that strongly favors upholding arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985) (discussing the legislative history of the FAA and holding that the purpose behind the FAA is to ensure judicial enforcement of private arbitration agreements). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself . .

4

. or like defense to arbitrability." *Moses,* 460 U.S. at 24–5; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (holding that when determining the scope of an arbitration agreement, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability").

While the FAA establishes a strong presumption in favor of arbitration, the Supreme Court has also held that general state law principles of contract interpretation should apply when attempting to determine the scope of an arbitration clause. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees Leland Stanford Junior U.*, 489 U.S. 468, 475–76 (1989).

Here, although Giraud recognizes that the Independent Contractor Agreement contained the Arbitration provision, Giraud contends that the parties clearly implied an intent to supersede or repudiate any such provision by subsequently entering into the Commission Agreement (Dkt. No. 25, 6-8). To support this repudiation argument, Giraud relies upon *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014). The *Dasher* court examined under North Carolina state law, the intentions of the parties, as detailed in their agreements, to determine whether a new agreement between the parties discharged or superseded a prior agreement between the same parties. *Id.* at 1116. In *Dasher*, as in this case, the original agreement between the parties contained an arbitration clause, while the new agreement did not. *Id.* at 1118. Significantly, in *Dasher*, the original agreement contained an "amendment clause", which allowed the right to change "'any part or parts of the [original] [a]greement' at any time" and that "the most current

5

version of the [parties'] [a]greement *supersedes all prior versions* and will at all times govern." *Id.* at 1117 (emphasis in the original).  Because of the clear and unambiguous intention of the parties, as detailed in the "amendment clause", the *Dasher* court concluded that it was the expressed intention of the parties to supersede the original agreement, which contained the arbitration provision, and be governed by the new agreement, which did not contain an arbitration provision.  *Id.*  Thus, the *Dasher* court held that the parties' dispute could not be compelled to arbitration.  *Id*. at 1122.

In this case, as noted above, the Independent Contractor Agreement included an arbitration clause (Dkt. No. 1, Ex. E), while the Commission Agreement did not (Dkt. No. 1, Ex. D).  Under Florida law, the novation of a prior agreement in favor of a superseding agreement "is controlled by the intention of the parties" and requires an agreement between the parties that the new contract will replace and extinguish the old one.  *Lakeland Silex Brick Co. v. Jackson & Church Co.*, 168 So. 411, 413 (Fla. 1936); *Electro–Protective Corp. v. Creative Jewelry by Kempf, Inc.*, 513 So. 2d 190, 192 (Fla. 5th DCA 1987).  Unlike in *Dasher*, the Independent Contractor Agreement includes no novation provision expressing that the acceptance of a new agreement would terminate the Independent Contractor Agreement (Dkt. No. 25, Ex. A, Ex. 1).  And the Commission Agreement contains no language which could plausibly be construed as an expression of the parties' intentions to repudiate the Independent Contractor Agreement, and have the Commission Agreement supersede the Independent Contractor Agreement and govern at all times (Dkt. No. 1, Ex. D).  Contrary to Giraud's assertion, the parties did not clearly express or imply an intent to supersede or repudiate the Independent Contractor Agreement with the Commission Agreement.  Rather, it is clear, given the detail of both agreements, that the Giraud and Defendants intended to be governed by the Independent Contractor Agreement during the life of the agreement from February 22, 2016

6

until August 2017, and then to be governed by the Commission Agreement going forward from August 2017 until Giraud's termination. It is equally clear that the Arbitration provision of the Independent Contractor Agreement applies to any disputes between Giraud and Defendants arising from their relationship during the life of the Independent Contractor Agreement between February 22, 2016 and August 2017, when Giraud executed the Commission Agreement. Less clear is whether the Arbitration provision would also be applicable to any disputes between Giraud and Defendants after Giraud executed the Commission Agreement in August 2017 until Giraud's termination.

Under certain circumstances, even when parties supersede a prior agreement containing an arbitration clause by forming a new agreement that is silent on arbitration, the prior agreement's arbitration clause can remain binding upon the parties' new agreement. *See e.g.*, *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 283–84 (2d Cir. 2005); *Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir.1987), *abrogated on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988); *Sher v. Goldman Sachs*, No. CCB–11–2796, 2012, WL 1377066, at *1–2 (D.Md. Apr. 19, 2012); and *DeMartini v. Johns*, No. 3:12–cv–03929–JCS, 2012, WL 4808448, at *6 (N.D.Cal. Oct. 9, 2012). An arbitration provision from a prior agreement can remain in effect upon the execution of a new agreement based upon various reasons, such as when the new agreement contains a merger clause. *See e.g.*, *Bank Julius Baer*, 424 F.3d at 281–83; *DeMartini*, WL 4808448, at *2. A primary consideration in determining the continued viability of an arbitration provision is again the expressed intentions of the parties based upon a review of the terms of the agreements. Here, both the Independent Contractor Agreement and the Commission Agreement are silent on whether the Arbitration provision shall remain in effect with the Commission Agreement. Absent any clear expression in either the Independent Contractor

7

Agreement or the Commission Agreement about the continued viability of the Arbitration provision, it is difficult to conclude that the parties should be governed by the Arbitration provision for any disputes after the life of the Independent Contractor Agreement. Further, during the January 25th hearing, Defendants recognized this issue, and conceded that the Arbitration provision should only apply to disputes that occurred during the life of the Independent Contractor Agreement. Given the clear expressed intentions of the parties, the Arbitration provision should only be applied to any disputes arising during the life of the Independent Contractor Agreement. Based upon the record before the Court, Giraud's claims occurring between February 22, 2016, and the execution of the Commission Agreement in August 2017, should be subject to the Arbitration provision. Additionally, Westley's, Schumm's, and Stewart's claims which arise under the life of their respective Independent Contractor Agreements should also be subject to the Arbitration provision.[5]

It must be noted that the Independent Contractor Agreements at issue are signed by Plaintiffs, individually, and signed by a representative of Woof Gang Bakery & Grooming, Clearwater (Dkt. No. 23, Exs. 1 & 3). Thus, all of the Defendants are not signatories to the Independent Contractor Agreement. Plaintiffs have not raised the issue on whether any Defendant who is a non-signatory to the Independent Contractor Agreement can invoke the Arbitration provision. It appears that Plaintiffs have conceded that issue. Regardless, even if Plaintiffs pursued the issue it would have been without merit, as courts regularly allow a non-signatory to enforce an arbitration agreement against a signatory based on estoppel when the signatory: (1) asserts claims against a non-signatory that either arise out of or are inextricably intertwined with the signatory's agreement, or (2) asserts claims that treat both non-signatories

---

[5] As noted previously, the record is silent as to whether Westley, Schumm, or Stewart executed a Commission Agreement. Thus, the life Westley's, Schumm's, and Stewart's Independent Contractor Agreements is unknown.

8

and signatories as a joint entity with congruent interests. *See generally Talk Fusion, Inc. v. Ulrich,* No. 8:11-CV-1134-T-33AEP, 2011 WL 4102215, at *4 (M.D. Fla. Aug. 30, 2011)*, report and recommendation adopted,* No. 8:11-CV-1134-T-33AEP, 2011 WL 4102206 (M.D. Fla. Sept. 14, 2011) and (Dkt. No. 22, 10-13).  Here, both circumstances are present, thus it is entirely appropriate that Plaintiffs' claims against all Defendants be subject to the Arbitration provision.

Plaintiffs also argue that the language of the Arbitration provision encompasses none of their FLSA claims (Dk. No. 25, 8) (citing *Patricoff v. Home Team Pest Defense*, Nos. 6:05 CV-1769-ORL-31KRS, 6:05 CV-1770-ORL-31KRS, 2006 WL 890094, at *1 (M.D. Fla. Apr. 3, 2006).  Plaintiffs' argument is misguided for two reasons.  First, the Arbitration provision does not specifically limit or restrict the applicability of the provision to certain causes of action.  And, second, the language of the Arbitration provision is broad enough to encompass any FLSA claims.  *See, e.g., Lorusso v. Sun Holdings, LLC,* No. 8:14 CV-00822-EAK, 2015 WL 628793 at *1 (M.D. Fla. Feb. 12, 2015) (holding that an arbitration provision in an employment agreement covers any claims in a FLSA collective action).  Further and more significant, the Arbitration provision requires that "[a]ny controversy between the parties to this Agreement involving the construction or *application of any of the terms, provisions, or conditions of this Agreement*" are subject to arbitration (Dkt. No. 1, Ex. E, ¶ 23) (emphasis added).  Plaintiffs' allegation that the Groomers were misclassified as independent contractors calls into dispute the very terms of the Independent Contractor Agreement (Dkt. No. 1, ¶ 2).  For example, the Independent Contractor Agreement states that an "Independent Contractor is not an employee of the Company" and that an "Independent Contractor shall have an Independent Contractor status and not be an employee for any purpose" (Dkt. No. 1, Ex. E, ¶ 1 & 2).  Given that Plaintiffs' claims question the validity of the application of the terms of the Independent

9

Contractor agreement, then Plaintiffs' FLSA claims must be subject to the Arbitration provision.

## Conclusion

Accordingly, after due consideration and for the foregoing reasons, it is hereby

**RECOMMENDED**:

1. Defendants' Motion (Dkt. No. 22) be **GRANTED** to the extent that the Plaintiffs' (Annette Giraud, Brittany Westley, Erika Schumm, and Amanda Stewart) claims which occurred during the life of their respective Independent Contractor Agreements be **DISMISSED**, as those claims are subject to a binding arbitration agreement; and

2. Plaintiffs be directed to file an amended complaint within a specified time period to assert any remaining viable claims.

**IT IS SO REPORTED** in Tampa, Florida, on this 4th day of April, 2018.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

cc: Hon. Richard A. Lazarra
 Counsel of Record